# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

JOSEPH QUENGA,     )
                       )
      Petitioner,    )
                       )
v.                   )     Case No. CV408-085
                       )
JAMES L. LANIER, *Warden,*  )
*Wayne State Prison*,     )
                       )
      Respondent.   )

## <u>REPORT AND RECOMMENDATION</u>

Joseph Quenga, currently incarcerated at Wayne State Prison in Odum, Georgia, has petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondent has filed an answer opposing the petition. (Doc. 18.) For the reasons that follow, the petition should be **DENIED**.

## I. BACKGROUND

On March 22, 2002, a Chatham County jury convicted Quenga of rape, two counts of kidnapping, false imprisonment (as a lesser included offense to kidnapping), and sexual battery. (Doc. 1 at 3; Resp't's Ex. 4, State Habeas Ex. 1.) These crimes were committed while Quenga served as a Savannah police officer. He was sentenced to ten years' imprisonment for the rape count and each of the kidnapping counts to be served concurrently; five years' imprisonment on the false imprisonment count to be served consecutively to the previous sentences; and twelve months' imprisonment on the sexual battery count to be served concurrently with the false imprisonment count. (Resp't's Ex. 4, State Habeas Ex. 1.) On December 11, 2003, the superior court denied Quenga's motion for new trial. (Id.)

Quenga appealed, contending that the trial court erred by denying: (1) his motions for severance of his offenses, (2) his motion for a directed verdict, and (3) his request to charge on a lesser included offense. Quenga v. State, 605 S.E.2d 860, 861 (Ga.

Ct. App. 2004). On October 20, 2004, the Georgia Court of Appeals affirmed his conviction. Id.

On September 29, 2005, Quenga filed a state habeas corpus petition in the Superior Court of Wayne County asserting three grounds for relief. (Resp't's Ex. 2.) First, he alleged that his counsel performed ineffectively by failing to: (1) file a plea in abatement to dismiss the indictment before trial and have petitioner appear before the grand jury to testify; (2) object to the state's exhibits, which were admitted into evidence without objection; (3) subpoena the videotapes from the police department of petitioner's patrol car traffic stops; (4) object during the grand jury proceeding to the prosecution's presentment by the lead detective of out-of-court statements made to the detective by witnesses who were called to testify; (5) file a motion to suppress evidence obtained from petitioner's personal vehicle and petitioner's resignation letter; and (6) interview any witnesses prior to trial and request a separate sentencing hearing where character and mitigation evidence could be presented. (Resp't's Ex. 4 at 3.) Next, Quenga claimed that the prosecutor committed

misconduct by: (1) having the police perform an illegal search for evidence which was later introduced at trial; (2) failing to notify and serve him with a copy of the proposed indictment to be considered by the grand jury and failing to follow the procedures required by O.C.G.A. § 17-7-52; (3) having Officer Thompson testify to hearsay before the grand jury; (4) having Officer Thompson bolster the alleged victims' testimony at trial by repeating their statements and testifying that she "believed" them; (5) introducing petitioner's letter of resignation and implying to the jury that it was an admission of guilt; (6) withholding exculpatory evidence in the form of the videotape from the video camera in Quenga's patrol car; and (7) reading the law to the jury during closing argument. (Id. at 8-9.) Finally, Quenga contended that his due process rights were violated since he was not permitted to testify before the grand jury as allowed by O.C.G.A. § 17-7-52 and § 45-11-4. (Id. at 10.) The state habeas court entered an order denying his petition on March 7, 2007. (Id. at 11.) On April 21, 2008, the Supreme Court of Georgia denied his application for a certificate of probable cause to appeal the state habeas court's decision. (Resp't's Ex. 5.)

Quenga timely filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 5, 2008. (Doc. 1.) On May 28, 2008, this Court entered an order granting Quenga's motion to amend his petition.[1] (Doc. 9.) In his federal habeas petition, as amended, Quenga asserts the following grounds for relief:

---

[1] Quenga has since filed four more amended petitions, (docs. 7, 10, 14 & 22), and two motions for leave to amend seeking to add the claims raised in those petitions, (docs. 13 & 22). Mindful of Quenga's pro se status, the Court **GRANTS** his motion for leave to amend to assert the claims raised in his second amended petition, (Doc. 13), and will consider the cases he cites in his third amended petition. For the following reasons, however, the Court must deny his motion to amend to add the claims raised in his fourth and fifth amended petitions.

AEDPA established a one-year statute of limitations for habeas corpus petitions filed by state prisoners. See 28 U.S.C. § 2244(d). One of the four occurrences listed in § 2244(d)(1) that starts the limitations period is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Because Quenga does not allege that he sought a writ of certiorari to appeal the decision of the Georgia Court of Appeals to the Georgia Supreme Court, his conviction became final on October 30, 2004, when the ten-day period for filing a notice of intention to apply for certiorari expired. Ga. Sup. Ct. R. 38(1). Between October 30, 2004 and September 29, 2005, when he filed his state habeas corpus petition, 334 days passed. The statute of limitations was tolled from September 29, 2005 until April 21, 2008, when the Georgia Supreme Court denied his certificate of probable cause to appeal the denial of his state habeas petition. Since Quenga allowed 334 days of the one-year limitations period to expire prior to filing his state habeas action, he had 31 days, or until May 22, 2008, in which to timely file a federal habeas petition. Accordingly, his petition, filed on May 5, 2008, was timely. Quenga, however, did not file his third, fourth, and fifth amended petitions until after the limitations period expired: his third petition was filed on June 2, 2008, his fourth on June 5,

2008, and his fifth on July 17, 2008. Accordingly, absent relation-back of his claims, he is time-barred from asserting any new claims raised in those petitions.

Quenga filed his third amended petition for the "purpose of . . . draw[ing] this Honorable Court's attention to . . . recent precedent . . . by the Court of Appeals of Georgia and the Supreme Court of Georgia." (Doc. 10 at 2.) As Quenga does not seek to assert any new claims in this document, but only desires the Court to consider cases he believes support his previously stated grounds for relief, the AEDPA statute of limitations is not implicated and the Court will simply consider the cases Quenga has cited..

Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amended claim will relate back if it arises out of the same "conduct, transaction, or occurrence" set forth in the original petition. See also 28 U.S.C. § 2242 (noting that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions"). In the context of § 2254 petitions, the Supreme Court has held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). See also Davenport v. Unites States, 217 F.3d 1341, 1346 (11th Cir. 2000) (taking into consideration whether the original pleadings contained any mention of the "activity or inactivity" upon which the new claim is based). Although it is not entirely clear what claim Quenga seeks to add in his fourth amended petition, it appears that he is seeking to claim that the trial court erred in allowing one of the victims' mothers to testify about her daughter's statements to her about the rape, since the daughter allegedly did not report the rape to her mother until seven months after it occurred. (Doc. 14 at 2 n.1.) This claim arises from "facts that differ in both time and type from those the original pleading set forth." See, e.g., Davenport, 217 F.3d at 1346 (finding that petitioner's three new claims—that his counsel was ineffective for (1) allowing him to be sentenced based on three grams of cocaine that were not part of the same course of conduct as the other forty-nine grams of cocaine, (2) relying on a summary lab report instead of requesting a complete lab report, and (3) failing to advise him that a plea agreement might be possible—did not relate back to his original claims—that his counsel was ineffective (1) for not objecting that the drugs he had were not "crack cocaine," because they lacked sodium bicarbonate, (2) for not objecting to the drug weight as improperly including certain moisture content, and (3) for not asserting that the government allowed its witness to perjure himself by claiming he expected no benefit); Ennis v. United States, 2006 WL 2715126, at *6 (S.D. Ala. Sept. 22, 2006) (finding that "petitioner's new claims that counsel was ineffective in

1.  Counsel performed ineffectively by failing to:

    (a) file a plea in abatement to dismiss the indictment and
        have Quenga testify before the grand jury;
    (b) challenge the state's failure to give him an opportunity
        to appear before the grand jury on direct appeal;
    (c) object to the state's exhibits;
    (d) subpoena the videotapes of the traffic stops;
    (e) object to the lead detective's hearsay testimony;
    (f) raise the hearsay issue during the motion for new trial or
        on direct appeal;[2]
    (g) file a motion to suppress evidence obtained from his
        personal vehicle and his resignation letter; and

---

failing to tell him that an information had been filed and in incorrectly telling
him that the mandatory minimum would be less if he pleaded guilty than if he
were found guilty at trial" did not relate back to his timely claim that counsel
was ineffective in failing to investigate the quantity of drugs at issue;
additionally finding that "his new claim that counsel was ineffective in failing
to argue that [28 U.S.C. § 851] unconstitutionally delegates to the executive
branch legislative authority to fix punishment" could not relate back to "his
original claim that section 851 unconstitutionally allows a judge to determine
prior felony drug convictions by a preponderance of the evidence rather than a
jury by a reasonable doubt standard"). Accordingly, Quenga's motion to
amend to assert the claims raised in his fourth amended petition is **DENIED**.
In his fifth amended petition, Quenga seeks to add a claim that the trial court
erred in denying his motion for severance of his offenses. (Doc. 22, Br. at 1.)
As with the previous claim, his claim arises from "facts that differ in both time
and type" from those set forth in his original pleading and, therefore, must be
**DENIED**.

Accordingly, his motion to amend to assert the claims raised in his
second and fourth amended petitions, (doc. 13), is **GRANTED** to the extent
that he seeks to add the claims raised in his second petition, but is **DENIED**
to the extent that he seeks leave to add the claims raised in his fourth petition.
Additionally, his motion for leave to file a fifth amended petition, (doc. 22), is
**DENIED**.

[2] Quenga was represented by the same attorney during his trial and
direct appeal. (Doc. 1 at 7.)

(h) interview any witnesses prior to trial, or request a separate sentencing hearing where character and mitigation evidence could be offered.

2. The prosecutor committed misconduct by:

   (a) having the police perform an illegal search for evidence which was later used at trial;
   (b) failing to notify Quenga 15 days before presenting the indictment to the grand jury and failing to serve him with a copy of the proposed indictment to be considered by the grand jury as required by O.C.G.A. § 17-7-52;
   (c) having Officer Thompson testify to hearsay before the grand jury;
   (d) having Officer Thompson bolster the alleged victims' testimony at trial by repeating their statements and testifying that she believed them;
   (e) introducing Quenga's letter of resignation and implying to the jury that it was an admission of guilt;
   (f) withholding exculpatory evidence in the form of the videotape from the video camera in his patrol car; and
   (g) reading the law to the jury during closing argument.

3. His due process and equal protection rights were violated since he was not afforded his rights under O.C.G.A. § 17-7-52 and 45-11-4.

4. The trial court erred by permitting hearsay testimony.

5. The trial court lacked jurisdiction to convict and sentence him since his indictment was "null and void."[3]

---

[3] Quenga alleges in paragraph five of his original petition that he is "actually innocent" and that a "constitutional violation has 'probably resulted' in the conviction of an innocent person." (Doc. 1 at 5.) He cites Schlup v. Delo, 513 U.S. 298 (1995), a case addressing actual innocence claims in the procedural default context. Although a habeas petitioner may present a freestanding "actual innocence" claim, the Court has determined that, based on the context and accompanying citations, Quenga presents his "actual

(Doc. 1, Addendum at 2-5; Doc. 4 at 2; Doc. 5 at 2; Doc. 7 at 3; Doc. 8 at 1-2, 6.)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412 (2000); Bell v. Cone, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); see Peterka v. McNeil, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); Trotter v. Sec'y, Dep't of Corr., 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's

innocence" claim for purposes of overcoming the procedural bars that prevent some of his claims from being considered, and not as a freestanding ground for habeas relief.

decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted). These new restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning and furnish separate bases for reviewing a state court's decisions. Bell, 535 U.S. at 694; Williams, 529 U.S. at 404-05; Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly

established federal law[4] if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 405-06, 412-13. A state court decision involves an "unreasonable application" of clearly established federal law where that decision correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. <u>Id.</u> at 407-08, 413. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411. Instead, the appropriate inquiry is whether the state court's application of Supreme Court precedent was "objectively

---

[4] The statutory reference to "clearly established Federal law, as determined by the Supreme Court of the United States," 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412. A federal habeas court may not look to "the case law of the lower federal courts" in determining what federal law is "clearly established." <u>Putnam</u>, 268 F.3d at 1241. This is a retrenchment from former practice, which allowed the federal courts of appeals to rely on their own jurisprudence in addition to that of the Supreme Court when conducting habeas review of a state court judgment. <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 519 U.S. 1074 (1997).

unreasonable." Id. at 409; Bell, 535 U.S. at 694; Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001). Conditioning the writ of federal habeas corpus upon a finding that the state court's legal analysis was *unreasonable* presents "a substantially higher threshold" than the pre-AEDPA standard. Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939 (2007).

A state court's factual findings "shall be presumed to be correct" unless rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. Dill v. Allen, 488 F.3d 1344, 1354 (11th Cir. 2007). This deference to state court fact findings, however, does not apply to mixed determinations of law and fact. Parker, 244 F.3d at 836.

A state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. Wright v. Moore, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of

his claim on the merits so as to warrant deference); Parker, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due").  With these considerations in mind, the Court will now turn to Quenga's asserted grounds for relief.

## III. ANALYSIS

Several of Quenga's claims are procedurally defaulted and are therefore not subject to review by this Court.

### A.    Procedural Default

The federal courts' respect of state procedural default rules is rooted in Supreme Court precedent.  In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.  Echoing the holding in Coleman, the Eleventh Circuit has stated that a § 2254 petitioner who improperly raises his federal claim in state court is "procedurally barred from pursuing

the same claim in federal court absent a showing of cause for and actual prejudice from the default," Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), or a showing of a "fundamental miscarriage of justice" arising from a colorable claim of actual innocence. Id. at 1306.

"Such procedural default can arise two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision." Id. (citing Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir. 1992)). "Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court." Id. (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998)); see also Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998). In other words, "[a] federal court must dismiss those claims or portions of claims that either (1) have been explicitly ruled procedurally barred by the highest state court

considering the claims, or (2) are not exhausted but would clearly be barred if returned to state court." <u>Sims v. Singletary</u>, 155 F.3d 1297, 1313 (11th Cir. 1998) (citations omitted).

### 1. Unexhausted Claims

In his federal habeas petition, Quenga claims for the first time that counsel performed ineffectively by failing to challenge on direct appeal the state's failure to give him an opportunity to appear before the grand jury (ground 1(b)), and by failing to raise, on the motion for new trial and on direct appeal, the issue of the trial court's admission of hearsay testimony (ground 1(f)).[5] He also raises for the first time a claim that the trial court erred by permitting the hearsay testimony from the lead detective (ground

---

[5] Although Quenga did not specifically allege during his state habeas proceeding that his attorney performed ineffectively by failing to raise the hearsay issue during the motion for new trial or direct appeal, he did raise a very vague ineffective assistance of appellate counsel claim. (Resp't's Ex. 6 at 18-19.) The state habeas court found that counsel raised the three issues on appeal that he thought had the most merit and that Quenga failed to show that "counsel unreasonably elected not to raise any meritorious issues post-trial and on appeal." (Resp't's Ex. 4 at 8.) Regardless, because Quenga never presented this specific ineffective assistance of appellate counsel claim during his state habeas proceeding, this Court finds that it was not "presented face-up and squarely" to the state habeas court. <u>Kelley v. Sec'y for Dep't of Corrs.</u>, 377 F.3d 1317, 1345 (11th Cir. 2004) (quoting <u>Martens v. Shannon</u>, 836 F.2d 715, 717 (1st Cir. 1988)).

4).[6]  Quenga never raised these claims in state court, either on direct appeal or during his state habeas case.  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1344 (11th Cir. 2004) ("To properly exhaust a claim, 'the petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits.'"); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State.").  Because Quenga failed to raise grounds 1(b),

---

[6]  Quenga did raise the issue of the detective's hearsay testimony in his state habeas petition.  Importantly, however, he only alleged that the prosecutor and his trial counsel were ineffective for the introduction, and the failure to object to the introduction, respectively, of the testimony. (Resp't's Ex. 3 at 12-13, 16.)  In his federal petition, however, he adds the additional allegation that the *trial court* erred in allowing the testimony to be presented. (Doc. 4 at 2.)

1(f), and 4 during any of his state proceedings, they are unexhausted.

Although ordinarily a federal court must require a habeas petitioner to present his unexhausted claims to a state court, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default," the federal court "can forego the needless 'judicial ping-pong'" by applying the state's procedural bar rule for the state court where there is no "reasonable possibility that an exception to the procedural bar may still be available to the petitioner." Snowden, 135 F.3d at 736-737; Bailey, 172 F.3d at 1305 ("federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile"); Chambers, 150 F.3d at 1327. "The unexhausted claims should be treated as if procedurally defaulted." Ogle v. Johnson,

488 F.3d 1364, 1370 (11th Cir. 2007) (citing Bailey, 172 F.3d at 1302).[7]

No purpose would be served by requiring Quenga to return to the state courts in an effort to exhaust the claims first presented in his federal petition, for it is clear a state habeas court would find the claims to be procedurally defaulted. Under Georgia's successive petition rule, a petitioner is required to raise all grounds for relief as soon as they are available, either at trial or on direct appeal, O.C.G.A. § 9-14-48(d), or in the petitioner's initial or amended state habeas petition. O.C.G.A. § 9-14-51. Claims not raised in a timely manner under the proper procedure at trial, on direct appeal, or in the state habeas petition may not be reviewed in a habeas corpus proceeding absent a showing of cause or prejudice. OC.G.A. §§ 9-

---

[7] The Supreme Court and the Eleventh Circuit have noted that because § 2254(b)'s exhaustion requirement "refers only to remedies still available at the time of the federal petition," a remedy is technically "exhausted" when it is no longer available due to a state law procedural rule. Engle v. Isaac, 456 U.S. 107, 125 n.28; Woodford v. Ngo, 548 U.S. 81, 92-93 (2006); Gray v. Netherland, 518 U.S. 152, 161 (1996); Chambers, 150 F.3d at 1326-27. Nevertheless, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court . . . Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." Woodford, 548 U.S. at 92; Sims, 155 F.3d at 1311 ("A federal court must dismiss those claims that are procedurally barred under state law.") (citing Harris v. Reed, 489 U.S. 255 (1989)).

14-48(d), 9-14-51. Any grounds not raised are considered defaulted, unless state or federal constitutional law requires review or unless the claim could not have reasonably been raised in the original petition. Id. As the Eleventh Circuit noted in Chambers:

> [t]he Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question 'could not reasonably have been raised in the original or amended [state habeas] petition.'

150 F.3d at 1327 (citing O.C.G.A. § 9-14-51). Quenga did not raise the above grounds for relief on direct appeal or in his state habeas petition despite the fact that they were available to be raised at that time. Accordingly, because the claims would now be barred by Georgia's successive petition rule, the Court should treat the claims as no basis for federal habeas relief absent a showing of cause and prejudice, or a fundamental miscarriage of justice based on actual innocence. Id. at 1306. Here, Quenga fails to allege cause for or prejudice resulting from his failure to raise the claims at the proper time during his state court proceedings. He does, however, allege

actual innocence in his petition (Doc. 1 at 5), but he fails to satisfy the actual innocence standard for excusing procedural default.

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To successfully plead actual innocence, a petitioner must show that his conviction resulted from a 'constitutional violation.'" Johnson v. Fla. Dep't of Corrs., 513 F.3d 1328, 1333 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "To do so, he must demonstrate 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Id. (quoting Schlup, 513 U.S. at 327; Arthur v. Allen, 452 F.3d 1234, 1245 (11th Cir. 2006)). That is, petitioner must raise "sufficient doubt about [his] guilt to undermine confidence in the result of the trial." Arthur, 452 F.3d at 1245 (quotations and citation omitted), and the Court will excuse his procedural default only if he "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial . . . ." Schlup, 513 U.S. at 316. Here, Quenga fails to present any new evidence

supporting his claim of innocence.[8] He simply makes a bare-bones allegation that he is actually innocent and he cites case law on the issue. (Doc. 1 at 5.) As a result of his failure to show how he is actually innocent, in addition to his failure to allege cause for or prejudice resulting from his failure to raise grounds 1(b), 1(f), and 4 at the proper time during his state court proceedings, all three grounds should be denied.

### 2. *Exhausted but Procedurally Barred Claims*

Grounds 2(a)-(g) and ground 3 are also procedurally defaulted. The state habeas court found that Quenga procedurally defaulted all of ground 2's prosecutorial misconduct claims, and ground 3's claim that Quenga's due process rights were violated by the denial of his alleged rights under O.C.G.A. § 17-7-52 and § 4-11-4, by not raising them at trial or on direct appeal. (Resp't's Ex. 4 at 9.) Moreover, the court determined that petitioner had not made a

---

[8] As addressed in footnote 3, above, the Court construes Quenga's allegation of "actual innocence" as being made in the procedural default context. Even assuming, however, that he intended the claim as a freestanding ground for habeas relief, his claim would fail. Because the Court finds that Quenga "has not come close to showing he is actually innocent, [it] need not decide whether a persuasive showing of actual innocence would in fact entitle [him] to habeas relief." Mize v. Hall, 532 F.3d 1184, 1195 n.9 (11th Cir. July 2, 2008).

sufficient showing of cause and prejudice to excuse the failure to raise them at the proper time.[9]

Because Quenga failed to raise these grounds for relief on direct appeal in violation of Georgia's procedural rules requiring him to do so, this Court finds that the state habeas court properly found these claims procedurally defaulted under O.C.G.A. § 9-14-48(d).[10] After reviewing the record, this Court finds that the state habeas court's determination that Quenga failed to establish cause

---

[9] As to grounds 2(a)-(g), the Court found that Quenga failed to establish either cause or prejudice to excuse his procedural default, as "Mr. Edwards did not see any evidence of prosecutorial misconduct" to support raising the misconduct claims at trial or on appeal. (Id. at 9-10.) As to ground 3, the court found that Quenga failed to establish prejudice resulting from his failure to timely raise this claim, because he in fact had no rights under the statutes "as [they] deal with offenses [committed by an officer] while in the performance of official duties . . . [and] [r]ape and kidnapping are not part of a peace officers [sic] official duties." (Id.) (citing State v. Galloway, 606 S.E. 2d 273 (2004)).

[10] Although petitioner alleges in his federal petition that the violation of his rights under the statutes constitutes both a due process and an equal protection violation, he alleged only the due process violation in his state habeas petition. Accordingly, the part of ground 3 alleging that his equal protection rights were violated is also procedurally defaulted, as he never presented it to the state courts. This unexhausted claim would now be barred by Georgia's successive petition rule, and therefore it should be treated as no basis for federal habeas relief "absent a showing of cause for and actual prejudice from the default." Bailey, 172 F.3d at 1302. Because Quenga fails to allege cause excusing his failure to present this claim to the state courts, it fails. Additionally, even if this ground had been presented to the state habeas court, that court would have found it procedurally barred under Georgia's contemporaneous-objection rule, O.C.G.A. § 9-14-48(d), as it did with his similar due process claim.

and prejudice was reasonable. Moreover, the Court finds that Quenga has failed to allege, much less establish, either cause or prejudice in order to excuse his procedural default. Nor, as discussed above, has he shown he is actually innocent. Consequently, the Court must respect the state habeas court's decision, and grounds 2(a)-(g) and 3 should be denied as procedurally defaulted.

### B.   Ineffective Assistance of Counsel

In ground 1, Quenga alleges that his counsel, Michael Edwards, performed ineffectively by failing to: (a) file a plea in abatement to dismiss the indictment and failing to have him testify before the grand jury; (b) allege on direct appeal that the state committed prosecutorial misconduct by failing to give him an opportunity to appear before the grand jury; (c) object to the state's exhibits; (d) subpoena the videotapes of the traffic stops; (e) object to the lead detective's hearsay testimony before the grand jury; (f) raise the hearsay issue during the motion for new trial or on direct appeal; (g) file a motion to suppress evidence obtained from his personal vehicle and his resignation letter; and (h) interview any

witnesses prior to trial and request a separate sentencing hearing where character and mitigation evidence could be offered. (Doc. 1, Addendum at 2-5; Doc. 4 at 2; Doc. 5 at 2.) As noted previously, grounds 1(b) and 1(f) of the ineffective assistance claim are procedurally defaulted, as they were never presented to the state courts and state law would not allow them to be brought at this time. During his state habeas proceeding, however, Quenga raised the other six grounds. (Resp't's Ex. 2.) After the state habeas court denied relief, the Georgia Supreme Court denied his application for a certificate of probable cause to appeal that decision. (Resp't's Ex. 5.)

As noted above, the Court must review § 2254 claims through the lens of clearly established federal law. The clearly established federal law applicable to these claims comes from <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether a petitioner received ineffective assistance of counsel. First, petitioner must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Second, petitioner must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. Id.

Under the performance prong, deficient performance is "that which is objectively unreasonable and falls below a wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). The reasonableness of the attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Strickland, 466 U.S. at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (citation omitted).

Under the prejudice prong, petitioner must establish that there was a reasonable probability that the results would have been

different but for counsel's deficient performance. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986); <u>Strickland</u>, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

The state habeas court held two evidentiary hearings on Quenga's claims, during which it heard testimony from Quenga and his former attorney, Michael Edwards. (Resp't's Exs. 6, 8.) At the hearings, it was established that Edwards was an experienced criminal attorney who had been practicing in Georgia since 1993. (Resp't's Ex. 6 at 20-22.) At the time he was retained by Quenga, approximately 80% of his practice involved criminal defense work, and he had handled "many" felony trials. (<u>Id.</u>) In preparation for Quenga's trial, Edwards met and spoke with Quenga on several occasions. (<u>Id.</u>) He also spoke with the prosecutor and several witnesses about the case. (<u>Id.</u> at 3-4.) Additionally, he filed several pre-trial motions, "including a discovery motion, [a] <u>Brady</u> motion, a general motion to suppress, [a] <u>Jackson-Denno</u> motion, and a speedy trial demand." (<u>Id.</u> at 4.) He reviewed the discovery with Quenga and prepared the case for trial. (<u>Id.</u> at 23-24.) He

unsuccessfully sought to have the trial court sever Quenga's charges. (Id. at 25.) He presented an innocence defense at trial and introduced character evidence to show that Quenga was a police officer committed to protecting the community and that "it was a 'he said/she said' case." (Id. at 27.)

Edwards testified during the hearing that he reviewed the indictment and did not believe that Quenga had a right to appear before the grand jury due to the nature of the allegations against him. (Id. at 25-26.) He also testified that he reviewed the search warrant for Quenga's vehicle and found no grounds upon which to file a motion to suppress. (Id. at 28.) He stated that he did not object to all of the state's exhibits because in some instances there was no basis on which to object. (Id. at 29, 62.) He testified that he actually did object to some of the exhibits on foundational grounds, but the exhibits were admitted over his objections, and he explained that he did not subpoena the videotapes because he "did not feel that the videos would have been helpful since the allegations made by the women were that the crimes occurred well after the stops." (Id. at 29, 31-32, 45.) Moreover, he noted that

Quenga had previously made statements indicating that his patrol vehicle's camera had not been working and Edwards felt it would have undermined Quenga's credibility in front of the jury if there was evidence that the cameras were in fact working.  (Id. at 33.) Quenga was sentenced immediately after the verdict was returned, and during that proceeding, Edwards asked the court to recall the testimony of the several character witnesses who had testified during trial about Quenga's life in the community and his record as a good police officer.  (Id at 36.)  During Quenga's appeal, Edwards raised the three issues that he felt had the most merit.  (Id. at 36.)

In its order, the state habeas court noted all of this testimony from Edwards.   (Doc. 18 at 5-6.)   It grouped all of Quenga's ineffective assistance of counsel claims (which are grounds 1(a), (c)-(e), and (h) in the present case) together, and applied Strickland, 466 U.S. 668 (1984), to the claims.  Although the state habeas court did not address each ineffective assistance claim separately, it is well settled that "a state court's summary rejection of a claim qualifies as an adjudication on the merits under § 2254(d) so as to warrant deference." See Blankenship v. Hall, 542 F.3d 1253, 1271

(11th Cir. 2008); <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008); <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1347 (11th Cir. 2005). The court found, considering the above facts, that Quenga's "grounds of ineffective assistance of counsel lack[ed] merit," as he had "failed to meet his burden to establish that counsel's actions were unreasonable and that [he] was prejudiced as a result." (Doc. 18 at 8.) The Court emphasized that "[c]ounsel conducted a thorough investigation, spoke with witnesses and with Petitioner," had "filed several motions and presented character witnesses at trial." (<u>Id.</u>)

After reviewing the record, this Court finds that Smith has failed to establish that the state habeas court's determination of the facts and application of controlling Supreme Court authority was unreasonable. <u>See</u> <u>Blankenship</u>, 542 F.3d at 1271 (habeas petitioner bears burden of showing that the state court's application of the <u>Strickland</u> standard was unreasonable).

First, as to ground 1(a), Edwards correctly concluded that Quenga did not have the right to notice and an opportunity to appear before the grand jury under O.C.G.A. § 45-11-4 and § 17-7-

52 because those statutes apply only "if the crimes charged were committed while the officer was in the performance of his duties as a police officer." Wiggins v. State, 626 S.E.2d 118, 120 (Ga. 2006). Because Quenga "stepped aside from the performance of his official duties when he committed the crime[s]" of rape, kidnapping, false imprisonment, and sexual battery, the statutes did not apply to him and he, therefore, did not have a right to notice of the indictment or a right to appear before the grand jury. Id.; State v. Galloway, 606 S.E.2d 273, 274-75 (Ga. Ct. App. 2004) (officer's "performance of his official duties does not include rape or any other sort of sexual assault" and therefore officer was "not entitled to the protections afforded by O.C.G.A. §§ 17-7-52 and 45-11-4"). Accordingly, Edwards did not perform ineffectively by failing to file a plea in abatement to dismiss the indictment nor by failing to have Quenga testify before the grand jury, ground 1(a).[11] Therefore, the

---

[11] Because Quenga was not entitled to appear before the grand jury, counsel did not perform ineffectively on direct appeal by failing to challenge the state's failure to give him an opportunity to do so. Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). This further supports this Court's denial of ground 1(b) (which has already been disposed of within this order due to Quenga's failure to exhaust the claim prior to presenting it to this Court).

state habeas court was not unreasonable in finding that trial counsel was not ineffective on this ground, and this Court may not disturb the state court's holding.

As to grounds 1(c) (Edwards' decision to object to some but not all of the state's exhibits), 1(d) (his decision not to subpoena the videotapes of the traffic stops), 1(e) (his failure to object to the lead detective's hearsay testimony),[12] 1(g) (his failure to move to suppress Quenga's resignation letter), 1(g) (his decision not to file a motion to suppress the evidence obtained from Quenga's vehicle), and 1(h) (his decision not to request a separate sentencing hearing),[13] the state habeas court, after describing the evidence

---

[12] Moreover, as to ground 1(e), although Quenga alleged in the state habeas proceeding that his counsel performed ineffectively by failing to object to the lead detective's hearsay testimony at the grand jury hearing, he never identified the exact testimony that was allegedly hearsay; accordingly, he failed to state a claim for relief on that ground. He likewise fails to identify the hearsay testimony that the detective allegedly testified to during the grand jury trial in his federal petition. "The law does not require a federal habeas court to hear a claim based entirely on conclusory allegations wholly devoid of specifics." Jones v. Crosby, 2006 WL 890003, at *16 (M.D. Fla. Mar. 31, 2006) (citing Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994)).

[13] Additionally, in ground 1(h), Quenga alleges that Edwards performed ineffectively by failing to interview "any" witnesses prior to trial. The state habeas court pointed out, however, that Edwards testified during the state habeas hearing that he did in fact speak with "several witnesses about the

31

elicited during the hearings (as previously described), found generally that "[c]ounsel conducted a thorough investigation, spoke with witnesses and with petitioner. . . . [and] filed several motions and presented character witnesses at trial." (Resp't's Ex. 4 at 3-8.) As a result, it held that Quenga had not met his burden of proving these grounds rendered his counsel ineffective. (Id. at 8.) Moreover, Edwards' actions were not ineffective, as Quenga failed to show that they constituted anything but sound trial strategy. See Strickland, 466 U.S. at 689 ("reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"). After reviewing the record, this Court cannot say that the state court's adjudication of these claims resulted in a decision that was contrary to clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the

---

case" prior to trial. (Resp't's Ex. 4 at 3-4.) As a result, it was reasonable for the state habeas court to reject this ground for relief.

evidence presented during the state court proceeding. 28 U.S.C. § 2254(d).

## C. Lack of Jurisdiction

In ground 5, Quenga claims that because his "indictment is null and void," the trial court lacked jurisdiction to convict and sentence him. (Doc. 8 at 6.) Since jurisdictional errors implicate "a court's power to adjudicate that matter before it, such error can never be waived by parties to litigation." United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) Accordingly, the "doctrine of procedural default does not apply" to this claim. Id. at 712-13. Regardless, this claim fails. As noted above, the fact that Quenga did not get an opportunity to testify before the grand jury does not render the indictment against him "null and void," because he had no such right to testify in the first place. Accordingly, Quenga's claim that the trial court lacked jurisdiction because his indictment was "null and void" is meritless.

## IV. CONCLUSION

For the foregoing reasons, Quenga's petition for a writ of habeas corpus should be **DENIED**. All pending motions should be

denied as moot.  (Docs. 16, 17, 19, 23 & 24.)  Quenga's request for the appointment of counsel is **DENIED**.  (Doc. 1, Addendum at 6.)

      **SO REPORTED AND RECOMMENDED** this  13th  day of January, 2009.

                  /s/ **G.R. SMITH**
                  **UNITED STATES MAGISTRATE JUDGE**
                  **SOUTHERN DISTRICT OF GEORGIA**